UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-22734

MARY LEE DUNFORD,

     Plaintiff,

v.

CARNIVAL CORPORATION & PLC,

     Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

     Plaintiff, MARY LEE DUNFORD (hereinafter "DUNFORD"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION & PLC, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

     1.    DUNFORD seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

     2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

     3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

     4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

     5.    DUNFORD is *sui juris* and is a resident and citizen of the state of Ohio.

     6.    CARNIVAL is a citizen of the state of Florida and the nation of Panama.

**ARONFELD TRIAL LAWYERS**

7.     CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.     CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a.     Operated, conducted, engaged in, or carried on a business venture; and/or

    b.     Had an office or agency; and/or

    c.     Engaged in substantial activity; and/or

    d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the threshold that DUNFORD tripped on, the door near the subject threshold, the surrounding area, the lighting in the area, and all material and effects pertaining thereto, including the design, visual condition, and/or any other material pertaining to the area.

11.     At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Sunshine*.

12.     DUNFORD'S incident occurred on or about January 23, 2022, while she was a fare paying passenger on CARNIVAL'S vessel, the *Sunshine*.

13.   At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in DUNFORD'S incident.

14.   On or about January 23, 2022, DUNFORD was walking around the top deck at approximately 10:00 p.m., when she approached the doorway at Club 02 on Deck 10. When DUNFORD'S friend opened the door, DUNFORD started to walk through when she encountered other people using the door. DUNFORD stepped forward to get inside, but the bottom of the doorway and area were poorly illuminated and she did not see that the threshold was raised.

15.   As a result, she tripped over the raised threshold, fell to the ground, hit her head, and sustained severe injuries that include, but are not limited to, a right distal femur fracture, blood loss, and possible head injuries.

16.   Before DUNFORD was taken to the ship's medical center, non-medical CARNIVAL personnel improperly tried to move her to a chair when her leg was broken before her injury was determined, while she was experiencing significant pain and bleeding, and these personnel told her that she only had a sprained ankle. These personnel also failed to bring DUNFORD ice for her head injuries within a reasonable amount of time. Eventually, after some time, CARNIVAL medical staff arrived and took her to the ship's medical center, but the ship's doctor failed to adequately treat DUNFORD'S injuries and failed to properly control her pain. The ship's doctor said he was unable to adequately treat DUNFORD's injuries, he refused to have her flown back to the United States for treatment, and instead arranged to have DUNFORD taken to the Dominican Republic for treatment. Furthermore, the ship's doctor failed to prescribe adequate pain medicine for her trip to the Dominican Republic and failed to adequately address her bleeding, which prevented the hospital in the Dominican Republic from being able to perform surgery on her due

to her blood loss. Furthermore, DUNFORD's emergency contact was not notified until the following day.

17.   At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

a.  The subject threshold's unreasonable and concealed protrusion, which made the threshold unreasonably easy for passengers such as DUNFORD to trip over.

b.  The subject threshold's unreasonable and concealed size, which made the threshold unreasonably easy for passengers such as DUNFORD to trip over.

c.  The unreasonable placement of the threshold/surroundings in a location where the threshold's presence was obscured by the surroundings, including, but not limited to, the nearby door, which was too close to the threshold such that DUNFORD was unable to see the threshold after walking through the door.

d.  The threshold, door, and surrounding area lacked adequate visual cues (such as conspicuous tape/signs/stickers/proper coloring/other visual cues) to help passengers see the threshold.

e.  The unreasonable passenger crowding in the subject area, caused by CARNIVAL'S unreasonable lack of reasonable crowd control.

f.  There was inadequate lighting in the area and on the threshold such that the area and threshold were too dark, dim, and not properly lit, and DUNFORD could not see the threshold as a result, causing her to trip over it.

g.  Other dangerous conditions that will be revealed through discovery.

18.   Each of these dangerous conditions alone was sufficient to cause DUNFORD'S incident and injuries, and DUNFORD is alleging that CARNIVAL was negligent as to each of these conditions separately and not cumulatively.

19.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a.   There was a warning sign that stated something to the effect of "watch your step" on the other side of the door and/or threshold from the side DUNFORD tripped over.

b.   After her incident, a passenger came to DUNFORD while she was laying on the ground and told her that she knew that similar incidents had previously happened.

c.   Furthermore, DUNFORD observed CARNIVAL'S crewmembers in the subject area at the time of the incident, and these crewmembers were in the immediate vicinity, such that DUNFORD reasonably infers that these crew members regularly used, observed, and tended to the subject area, and therefore were or should have been aware of the dangerous and/or risk-creating conditions thereof, and warned of and/or removed these conditions, and/or more reasonably controlled the crowd.

d.   Both prior to DUNFORD'S incident and after, CARNIVAL installed and/or refitted similar thresholds on the *Sunshine* and other ships in CARNIVAL's fleet in areas where they were more easily visible, where passengers could reasonably be expected to walk without obstructions such as the subject door, and with visual cues that made them more visible. Such thresholds were on ships in CARNIVAL's fleet, including Carnival Cruise Line, Princess Cruises, Holland America Line, Seabourn, P&O Cruises (Australia), Costa Cruises, AIDA Cruises, P&O Cruises (UK), and/or Cunard.

e.   CARNIVAL participated in the installation and/or design of the subject area, or

alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject threshold, such that CARNIVAL should have known of the design defects of the subject threshold and area before providing them for public use. These design defects include, but are not limited to, the structural dangers outlined in paragraph 17 of this Complaint.

f.  There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 17 of this Complaint, and CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable Defendant should have done.

g.  CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in DUNFORD'S incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject area prior to her incident.

h.  Previous passengers suffered prior incidents involving similar threshold falls, including, but not limited to, the Plaintiff in *DEBRA ROBERTS v. CARNIVAL CORPORATION*, Case 1:19-cv-25281-KMM, and in *AURELIA SMITH v. CARNIVAL CORPORATION*, Case 1:15-cv-24793-JEM, and in *BUNCH V. CARNIVAL CORP.*,

825 F. App'x 713, 719 (11th Cir. 2020).

    i.   Moreover, CARNIVAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

20.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

21.   The subject area and the vicinity lacked adequate safety features to prevent or minimize DUNFORD'S fall and/or impact.

22.   These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

23.   These hazardous conditions existed for a period of time before the incident.

24.   These conditions were neither open nor obvious to DUNFORD.

25.   At all times relevant, CARNIVAL failed to adequately inspect the subject area and the vicinity for dangers, and CARNIVAL failed to adequately warn DUNFORD of the dangers.

26.   At all times relevant, CARNIVAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

27.   At all times relevant, CARNIVAL failed to maintain the subject area and the vicinity in a reasonably safe condition.

28.   At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in DUNFORD'S incident.

29.   At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in DUNFORD'S incident.

30.   The crewmembers of the *Sunshine* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

31.   CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

32.   CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

33.   The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.   The crewmembers were represented to DUNFORD and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. DUNFORD detrimentally relied on these representations as she would not have proceeded on the subject cruise had he believed the crewmembers were not employees of CARNIVAL.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

35.   DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

36.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

37.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

38.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff

and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to DUNFORD and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 17 of the instant Complaint were present at the time of DUNFORD'S incident.

39.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

40.   These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

41.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

42.   CARNIVAL'S negligence proximately caused DUNFORD great bodily harm in that, but for CARNIVAL'S negligence, DUNFORD'S injuries would not have occurred.

43.   As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

44.    The losses are permanent and/or continuing in nature.

45.    DUNFORD suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

46.    DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

47.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

49.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to DUNFORD and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 17 of the instant Complaint were present

at the time of DUNFORD'S incident.

50.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant complaint.

51.   Moreover, these risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately maintain the subject area and the vicinity.

52.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

53.   CARNIVAL'S negligence proximately caused DUNFORD great bodily harm in that, but for CARNIVAL'S negligence, her injuries would not have occurred.

54.   As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

55.   The losses are permanent and/or continuing in nature.

56.   DUNFORD has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her

bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT III**
**NEGLIGENT FAILURE TO REMEDY**

57.    DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

58.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

59.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

60.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to DUNFORD and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 17 of the instant Complaint were present at the time of DUNFORD'S incident.

61.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

62.    Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the subject area.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 12 of 33**

63.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

64.   CARNIVAL'S negligence proximately caused DUNFORD great bodily harm in that, but for CARNIVAL'S negligence, her injuries would not have occurred.

65.   As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

66.   The losses are permanent and/or continuing in nature.

67.   DUNFORD has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**<u>NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION</u>**

68.    DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

69.    At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including DUNFORD.

70.    Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to DUNFORD.

71.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to DUNFORD and was negligent by failing to warn DUNFORD of the dangerous conditions discussed in paragraph 17 of the instant Complaint.

73.    Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

74.    These dangerous conditions were also created by CARNIVAL.

75.    CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn DUNFORD despite knowing of the dangers.

76.    These dangerous conditions existed for a period of time before the incident.

77.    These conditions were neither open nor obvious to DUNFORD.

78.    CARNIVAL'S breach was the cause in-fact of DUNFORD'S great bodily harm in

that, but for CARNIVAL'S breach her injuries would not have occurred.

79.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80.   CARNIVAL'S breach proximately caused DUNFORD great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

81.   As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

82.   The losses are permanent and/or continuing in nature.

83.   DUNFORD has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT**
**AREA AND THE VICINITY**

84.    DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1

through 34, as if set forth herein.

85.    At all times material hereto, CARNIVAL owed a duty to its passengers, and in

particular a duty to DUNFORD, not to permit dangerous conditions to be in places where they

could harm passengers, such as those discussed in paragraph 17 in the instant Complaint, as well

as to design and install reasonable safeguards.

86.    At all times material hereto, CARNIVAL participated in the design process of the

subject vessel by generating design specifications for the shipbuilder to follow, and to put the

vessel on which DUNFORD was injured into the channels of trade, and/or CARNIVAL approved

of the subject vessel's design, including the design of the subject area and the vicinity.

87.    At all times material hereto, CARNIVAL manufactured, designed, installed, and/or

approved of the *Sunshine* , including providing specifications to the shipbuilder in the original

build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in

particular a duty to DUNFORD, to design, install and/or approve of the subject area and the vicinity

without any defects.

88.    At all times material hereto, CARNIVAL through its agents and/or employees who

were acting in the course and scope of their employment and/or agency with CARNIVAL,

designed, installed, and/or approved of the subject area and the vicinity involved in DUNFORD'S

incident, which was also in violation of the applicable industry standards/recommendations and/or

other guidelines.

89.   CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

90.   CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Sunshine* , during the new build process.

91.   CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

92.   CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

93.   However, CARNIVAL permitted the dangerous conditions discussed in paragraph 17(a-e, f) of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

94.   The design flaws that made the subject area and the vicinity involved in DUNFORD'S incident unreasonably dangerous were the direct and proximate cause of DUNFORD'S injuries.

95.   CARNIVAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in DUNFORD'S incident, which it knew or should have known of.

96.   CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

97.   CARNIVAL'S breach was the cause in-fact of DUNFORD'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

98.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear

due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

99.   CARNIVAL'S breach proximately caused DUNFORD great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

100.   As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

101.   The losses are permanent and/or continuing in nature.

102.   DUNFORD has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF CARNIVAL'S CREW, STAFF, EMPLOYEES,**
**AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

103.   DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1

through 34, as if set forth herein.

104. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

105. The crewmembers who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, including specifically the crewmembers who were responsible for crowd control in the subject area, were agents of CARNIVAL for the following reasons:

a.      They were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

b.      These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

c.      These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.      CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

106. CARNIVAL is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in **paragraph 17** of the instant complaint.

107. CARNIVAL'S breach was the cause in-fact of DUNFORD'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

108. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

109.  This negligence proximately caused DUNFORD great bodily harm in that, but for this negligence, DUNFORD'S injuries would not have occurred.

110.  As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

111.  The losses are permanent and/or continuing in nature.

112.  DUNFORD has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VII**
**VICARIOUS LIABILITY AGAINST CARNIVAL FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF AND NON-MEDICAL STAFF THAT TREATED DUNFORD PRIOR TO THE MEDICAL STAFF SEEING HER**

113.  DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

114.  CARNIVAL, through the ship's medical staff (including its physicians and nurses),

and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

115.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

116.  At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of CARNIVAL, subject to its direction and control, who were engaged in the activity of discharging CARNIVAL'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

117.  CARNIVAL is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

118.  CARNIVAL directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

119.  CARNIVAL created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

120.  CARNIVAL pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

121.  CARNIVAL collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

122.  CARNIVAL'S marketing materials described the infirmary in proprietary language.

123.  The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the

ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by CARNIVAL.

124.   CARNIVAL provided the ship's medical personnel and regular crew certain forms of liability insurance and/or indemnification rights.

125.   At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

 a. Before DUNFORD was taken to the ship's medical center, non-medical CARNIVAL personnel improperly tried to move her to a chair without her consent when her leg was broken before her injury was determined, while she was experiencing significant pain and bleeding; and/or

 b. Before DUNFORD was taken to the ship's medical center, non-medical CARNIVAL personnel improperly told her that she only had a sprained ankle; and/or

 c. CARNIVAL's medical staff took an unreasonable amount of time to arrive to the scene of DUNFORD's incident and to take her to the ship's medical center; and/or

 d. The ship's doctor refused to have DUNFORD flown back to the United States for treatment, and instead arranged to have DUNFORD taken to the Dominican Republic for treatment; and/or

 e. The ship's doctor failed to prescribe adequate pain medicine for DUNFORD'S trip to the Dominican Republic; and/or

 f. The ship's doctor failed to adequately address DUNFORD's bleeding,

which prevented the hospital in the Dominican Republic from being able to perform surgery on her due to her blood loss; and/or

g.  DUNFORD's emergency contact was not notified until the following day; and/or

h.  CARNIVAL failed to promptly provide DUNFORD with proper medical and/or first aid care and attention; and/or

i.  CARNIVAL failed to timely and properly attend to DUNFORD, to her injuries, and to her pain; and/or

j.  CARNIVAL failed to provide reasonable medical and/or first aid care; and/or

k.  CARNIVAL failed to timely and properly treat and care for DUNFORD; and/or

l.  CARNIVAL failed to timely and properly examine DUNFORD'S injuries; and/or

m.  CARNIVAL failed to take proper measures to secure proper treatment for DUNFORD, including unreasonably delaying taking measures to secure such proper treatment; and/or

n.  CARNIVAL failed to properly bring and/or arrange for DUNFORD to be brought to a reasonable hospital/emergency room within a reasonable amount of time; and/or

o.  CARNIVAL failed to give DUNFORD proper discharge instructions; and/or

p.  The non-medical personnel also failed to bring DUNFORD ice for her head injuries within a reasonable amount of time; and/or

q.  CARNIVAL failed to give DUNFORD adequate pain medicine.

126.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

127.  Under the doctrine of *Respondeat Superior*, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

128.  CARNIVAL is therefore vicariously liable for all injuries and damages sustained by DUNFORD as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

129.  At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

130.  The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused DUNFORD great bodily harm in that, but for CARNIVAL negligence, DUNFORD'S injuries would not have occurred and/or said injuries would have been substantially lessened.

131.  CARNIVAL, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

132. As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and

nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

133.  The losses are permanent and/or continuing in nature.

134.  DUNFORD has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VIII
## APPARENT AGENCY
## FOR THE ACTS OF THE SHIP'S MEDICAL STAFF AND NON-MEDICAL STAFF THAT TREATED DUNFORD PRIOR TO THE MEDICAL STAFF SEEING HER

135.  DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

136.  At all times material hereto, the ship's medical staff and regular crew represented to DUNFORD and to the ship's passengers as employees and/or agents and/or servants of CARNIVAL, in that:

a.  The medical staff wore a ship's uniform;

b.  The medical staff ate with the ship's crew;

c.  The medical staff was under the commands of the ship's officers;

    d.   The medical staff worked in the ship's medical department;

    e.   The medical staff was paid a salary by CARNIVAL;

    f.   The medical staff worked aboard the vessel;

    g.   The medical staff spoke to DUNFORD as though they had authority to do so by CARNIVAL.

137.  In addition, CARNIVAL further represented to DUNFORD that the vessel's medical staff and regular crew were agents and/or employees of CARNIVAL through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as the "Carnival *Sunshine*'s Medical Center/our infirmary/our medical center," and through encouraging DUNFORD to make use of "its" infirmary/medical center if DUNFORD was in need of medical attention.

138.  Furthermore, at no time did CARNIVAL represent to DUNFORD in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff and regular crew were not agents or employees of CARNIVAL.

139.  At all material times, DUNFORD reasonably relied on the representations to DUNFORD'S detriment that the medical staff and regular crew were employees, and/or agents, and/or servants of CARNIVAL.

140.  It was reasonable to believe that the medical staff and regular crew were CARNIVAL'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by CARNIVAL.

141.  This reasonable reliance was detrimental because it delayed DUNFORD from receiving proper medical treatment and/or DUNFORD would not have gone on the subject cruise with CARNIVAL had DUNFORD known that the medical staff and regular crew on the ship were

not CARNIVAL'S agents.

142. CARNIVAL is estopped to deny that the medical staff and regular crew were its apparent agents, and/or apparent employees, and/or apparent servants.

143. CARNIVAL had a duty to provide DUNFORD with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide DUNFORD with reasonable care under the circumstances.

144. DUNFORD'S injuries were aggravated due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents as follows:

    a.  Before DUNFORD was taken to the ship's medical center, non-medical CARNIVAL personnel improperly tried to move her to a chair without her consent when her leg was broken before her injury was determined, while she was experiencing significant pain and bleeding; and/or

    b.  Before DUNFORD was taken to the ship's medical center, non-medical CARNIVAL personnel improperly told her that she only had a sprained ankle; and/or

    c.  CARNIVAL's medical staff took an unreasonable amount of time to arrive to the scene of DUNFORD's incident and to take her to the ship's medical center; and/or

    d.  The ship's doctor refused to have DUNFORD flown back to the United States for treatment, and instead arranged to have DUNFORD taken to the Dominican Republic for treatment; and/or

    e.  The ship's doctor failed to prescribe adequate pain medicine for DUNFORD'S trip to the Dominican Republic; and/or

f.  The ship's doctor failed to adequately address DUNFORD's bleeding, which prevented the hospital in the Dominican Republic from being able to perform surgery on her due to her blood loss; and/or

g.  DUNFORD's emergency contact was not notified until the following day; and/or

h.  CARNIVAL failed to promptly provide DUNFORD with proper medical and/or first aid care and attention; and/or

i.  CARNIVAL failed to timely and properly attend to DUNFORD, to her injuries, and to her pain; and/or

j.  CARNIVAL failed to provide reasonable medical and/or first aid care; and/or

k.  CARNIVAL failed to timely and properly treat and care for DUNFORD; and/or

l.  CARNIVAL failed to timely and properly examine DUNFORD'S injuries; and/or

m. CARNIVAL failed to take proper measures to secure proper treatment for DUNFORD, including unreasonably delaying taking measures to secure such proper treatment; and/or

n.  CARNIVAL failed to properly bring and/or arrange for DUNFORD to be brought to a reasonable hospital/emergency room within a reasonable amount of time; and/or

o.  CARNIVAL failed to give DUNFORD proper discharge instructions; and/or

p.  The non-medical personnel also failed to bring DUNFORD ice for her head

injuries within a reasonable amount of time; and/or

q.  CARNIVAL failed to give DUNFORD adequate pain medicine.

145.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

146. As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

147.  The losses are either permanent or continuing in nature.

148.  DUNFORD has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IX**
**ASSUMPTION OF DUTY FOR THE**
**NEGLIGENCE OF THE SHIP'S MEDICAL STAFF AND NON-MEDICAL STAFF THAT**
**TREATED DUNFORD PRIOR TO THE MEDICAL STAFF SEEING HER**

149.  DUNFORD hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34 as if set forth herein.

150.  CARNIVAL owed DUNFORD the duty to exercise reasonable care under the circumstances for the safety of its passengers.

151.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

152.  CARNIVAL elected to discharge this duty by having DUNFORD seen by its own ship's physicians and/or other crew members.

153.  As such, CARNIVAL voluntarily assumed a duty for the benefit of DUNFORD to use reasonable care in the provision of medical services to DUNFORD.

154.  At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

    a.  Before DUNFORD was taken to the ship's medical center, non-medical CARNIVAL personnel improperly tried to move her to a chair without her consent when her leg was broken before her injury was determined, while she was experiencing significant pain and bleeding; and/or

    b.  Before DUNFORD was taken to the ship's medical center, non-medical CARNIVAL personnel improperly told her that she only had a sprained ankle; and/or

    c.  CARNIVAL's medical staff took an unreasonable amount of time to arrive

to the scene of DUNFORD's incident and to take her to the ship's medical center; and/or

d. The ship's doctor refused to have DUNFORD flown back to the United States for treatment, and instead arranged to have DUNFORD taken to the Dominican Republic for treatment; and/or

e. The ship's doctor failed to prescribe adequate pain medicine for DUNFORD'S trip to the Dominican Republic; and/or

f. The ship's doctor failed to adequately address DUNFORD's bleeding, which prevented the hospital in the Dominican Republic from being able to perform surgery on her due to her blood loss; and/or

g. DUNFORD's emergency contact was not notified until the following day; and/or

h. CARNIVAL failed to promptly provide DUNFORD with proper medical and/or first aid care and attention; and/or

i. CARNIVAL failed to timely and properly attend to DUNFORD, to her injuries, and to her pain; and/or

j. CARNIVAL failed to provide reasonable medical and/or first aid care; and/or

k. CARNIVAL failed to timely and properly treat and care for DUNFORD; and/or

l. CARNIVAL failed to timely and properly examine DUNFORD'S injuries; and/or

m. CARNIVAL failed to take proper measures to secure proper treatment for DUNFORD, including unreasonably delaying taking measures to secure

such proper treatment; and/or

n.   CARNIVAL failed to properly bring and/or arrange for DUNFORD to be brought to a reasonable hospital/emergency room within a reasonable amount of time; and/or

o.   CARNIVAL failed to give DUNFORD proper discharge instructions; and/or

p.   The non-medical personnel also failed to bring DUNFORD ice for her head injuries within a reasonable amount of time; and/or

q.   CARNIVAL failed to give DUNFORD adequate pain medicine.

155.  At all times material hereto, the aforementioned acts or omissions on the part of CARNIVAL fell below the standard of care.

156.  CARNIVAL'S negligence proximately caused DUNFORD great bodily harm in that, but for CARNIVAL'S negligence, DUNFORD'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

157.  CARNIVAL, through its employees and agents, to wit, the ship's medical staff and regular crew, knew, or should have known, that the medical and first aid procedures they employed violated reasonable standards of medical care.

158.  As a result of CARNIVAL'S negligence, DUNFORD has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of DUNFORD'S vacation, cruise, and transportation costs.

159.  The losses are permanent and/or continuing in nature.

160.  DUNFORD has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY LEE DUNFORD, demands Judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that DUNFORD will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of DUNFORD'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, MARY LEE DUNFORD, demands trial by jury on all issues so triable.

**Dated:** August 29, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff***